The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or to amend the Opinion and Award.
********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff-employee.
3. Defendant-employer is insured through North Carolina Interlocal Risk Management Agency.
4. Plaintiff's average weekly wage at the time of his injury was $260.00.
5. The parties stipulate into the record of medical records from plaintiff's health care providers, and defendant's answers to plaintiff's interrogatories and plaintiff's answers to defendant's interrogatories.
********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 32 year old male. He has a high school equivalency diploma and has received a certificate in welding from a technical school.
2. Plaintiff began working for defendant-employer in September, 1994 as a sanitation department employee. His duties as a sanitation department employee were to pick up trash and yard waste and load it onto sanitation department trucks. The average size of the trash bags collected by the sanitation workers were 40 gallon size, weighing approximately 30 pounds each when filled. The number of bags loaded on a sanitation truck during the month of February was an average of 85 bags per load and one to two loads daily.
3. During the last week of February, 1995, plaintiff began experiencing soreness in his right shoulder. On March 2, 1995, plaintiff experienced a pop in his right shoulder and felt a sharp pain while performing his assigned job duties. Plaintiff continued to work for approximately an hour before he notified his supervisor, Larry Iverson, of his injury. Plaintiff attempted to finish his trash collection route but was unable to do so.
4. Plaintiff sought medical treatment for his right shoulder at Cape Fear Valley Medical Center on March 2, 1995. Plaintiff was diagnosed with tendonitis in his right shoulder and given a note restricting him to light duty work for one week.
5. Plaintiff reported to work on March 3, 1995 with a note restricting him to light duty work. After being told there was no light duty work available, plaintiff elected to go out on a route and perform his regular job duties. Plaintiff did not return to work for defendant-employer after this date. Plaintiff later worked for a paving company, for a carpet care and cleaning service, as an electrician's helper, and at the time of the hearing was delivering house materials.
6. Plaintiff next sought medical treatment on March 7, 1995 at Cedar Creek Family Care. He was seen by Dr. Robert M. Clark. Dr. Clark diagnosed shoulder pain and prescribed non-steroidal medication. The plaintiff returned to Dr. Clark on March 13, 1995 for a follow-up visit to evaluate how well the medication had worked. At that time, plaintiff still had swelling and pain in his right shoulder. Dr. Clark referred the plaintiff to Dr. Kouba, an orthopedist, for treatment. Plaintiff continued to see Dr. Clark and was sent to physical therapy at Physician's Total Rehabilitation in Fayetteville.
7. Plaintiff's medical records from Physician's Total Rehab indicate a diagnosis of right shoulder strain and impingement syndrome of his right shoulder.
8. Plaintiff received a cortisone steroid injection from Dr. Kouba on April 10, 1995, and was advised to hold off on further physical therapy for a few weeks. Plaintiff did not return to Dr. Kouba after this visit. Plaintiff's injury improved slowly following his physical therapy. Plaintiff was last examined by Dr. Clark on July 25, 1995.
9. Dr. Clark discharged the plaintiff on July 25, 1995. Plaintiff had not reached maximum medical improvement at that time. Plaintiff needed an arthroscopic procedure to further evaluate his injury since it did not resolve with standard conventional therapy. Plaintiff did not have this procedure performed nor did he follow-up with the orthopedic specialist, who was Dr. Kouba, as recommended by Dr. Clark.
10. Plaintiff's tendonitis is common among people who are actively engaged in physical activity, including labor and certain sporting activities. Plaintiff did engage in various strenuous sporting activities.
********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's incident of March 2, 1995, where he experienced a pop in his right shoulder was not an injury by accident as defined by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff has failed to show by the greater weight of the evidence that the condition for which he sought medical treatment and which is the subject of this claim is caused by conditions characteristic of and peculiar to his employment with defendant-employer. Plaintiff's tendonitis is an ordinary disease of life to which the general public is equally exposed. Plaintiff's condition is, therefore, not an occupational disease. N.C. Gen. Stat. § 97-53 (13).
********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim under the law must be, and is hereby DENIED.
2. Each side shall pay its own costs; however, the defendant shall pay an expert witness fee in the amount of $150.00 to Dr. Robert M. Clark.
This the 16th day of April 1997.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________ THOMAS J. BOLCH COMMISSIONER
S/ _______________ COY M. VANCE COMMISSIONER
DCS:jmf